IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| GEOTAG, INC.<br><br>v.<br><br>GEORGIO ARMANI S.P.A., ET AL. | CIVIL ACTION NO. 2:10-cv-569-TJW |
| GEOTAG, INC.<br><br>v.<br><br>AROMATIQUE, INC., ET AL. | CIVIL ACTION NO. 2:10-cv-570-TJW |
| GEOTAG, INC.<br><br>v.<br><br>GUCCI AMERICA, INC., ET AL. | CIVIL ACTION NO. 2:10-cv-571-TJW-CE |
| GEOTAG, INC.<br><br>v.<br><br>STARBUCKS CORP., ET AL. | CIVIL ACTION NO. 2:10-cv-572-TJW |
| GEOTAG, INC.<br><br>v.<br><br>RENT-A-CENTER, INC., ET AL. | CIVIL ACTION NO. 2:10-cv-573-TJW-CE |
| GEOTAG, INC.<br><br>v.<br><br>THE WESTERN UNION CO., ET AL. | CIVIL ACTION NO. 2:10-cv-574-DF –CE |

| | |
|---|---|
| GEOTAG, INC. <br><br> v. <br><br> ROYAL PURPLE, INC., ET AL. | CIVIL ACTION NO. 2:10-cv-575-TJW |
| GEOTAG, INC. <br><br> v. <br><br> YAKIRA, L.L.C., ET AL. | CIVIL ACTION NO. 2:10-cv-587-TJW |
| GEOTAG, INC. <br><br> v. <br><br> WHERE 2 GET IT, INC., ET AL. | CIVIL ACTION NO. 2:11-cv-00175-DF |

**GEOTAG'S RESPONSE IN OPPOSITION TO THE MOTION TO STAY
FILED BY CERTAIN DEFENDANTS**

I.      INTRODUCTION.

Movants have failed to meet their burden of showing that these cases should be stayed, including because Movants base their Motion almost entirely upon unsupported lawyer argument. Movants allege that some Defendants, the vast majority of whom are unnamed, are current "customers" of Google, Microsoft and Where 2 Get It ("W2GI"), yet they omit to provide any evidence of this, much less any meaningful evidence of the products or services allegedly provided to such Defendants by these "Providers." Further, Movants fail to provide any evidence that Google, Microsoft and W2GI have been "Providers" over the last six years of the methods and systems of the various Defendants which are accused of infringement.[1] Movants allege that it would be a "waste of judicial resources" to permit the Texas cases to proceed, and that "judicial efficiency" would be served by a stay because the Delaware litigation *may* "dispose of major premises" being litigated in Texas and "*may* even moot the Texas litigation entirely." However, the _sum total_ of the evidence regarding Microsoft and Google vis-a-vis the Defendants is that *some* of them, most of whom are unidentified, make *some* use of Bing Maps or Google Maps, and there are multiple, locator-related features that Bing Maps or Google Maps are *capable of* providing. The evidence put forth regarding W2GI's involvement with the accused systems and methods of any defendants is even more sparse – in fact there is _no such evidence at all_.

Defendants suggest that this Court's cases should be stayed because collectively they involve a large number of accused infringers. However, there is no justice or efficiency in such a course. GeoTag believes that its '474 patent is being infringed by the Defendants and GeoTag should have its day in court to address that infringement.

---

[1] As this Court is well aware, the Patent Act permits recovery of infringement damages for six years prior to the filing of suit.

Movants have not shown that the two Delaware cases – which were filed after eight of the nine cases in this Court – will resolve *any* infringement issues for *any* Defendant before this Court except W2GI.[2] The only certain result of a stay is years of delay of these cases. As William Gladstone aptly put it over a hundred years ago, "justice delayed is justice denied."

Defendants many unsupported allegations appear to boil down to an argument that the "customer suit" exception should justify a stay of these cases. However, Movants' allegations of a customer suit exception are no different from their other allegations – they lack evidentiary support. Movants have not shown that Google, Microsoft or W2GI are manufacturers of any specific methods and systems accused of infringement in this case, nor have Movants shown that they are mere resellers of any products of Google, Microsoft or W2GI which are accused of infringement in these cases. In sum, the motion to stay lacks evidentiary or legal support, and it should be denied.

## II.  FACTUAL BACKGROUND.

GeoTag is the owner of the '474 patent-in-suit. GeoTag also has a fully functioning Yellow Page website, Zland Yellow Pages, which is run from GeoTag's headquarters and sole office in Frisco, Texas.[3] Substantially all of GeoTag's business activities take place in the Eastern District of Texas, and GeoTag has no business operations, offices or employees in Delaware. Ex. 2 at ¶¶ 8-9. GeoTag's executive management is located within the Eastern District of Texas. Ex. 3, at ¶ 3. In addition, GeoTag contracts with support services primarily in Texas rather than hiring full time employees depending on the particular work required. *Id.* at ¶ 4.

---

[2] GeoTag does not dispute that W2GI sued GeoTag a day before GeoTag sued W2GI.  For the reasons stated in GeoTag's Motion to Dismiss or Transfer the *W2GI* case, it should not be entitled to first-filed status because it was filed in bad faith. *See* Ex. 1, including at Ex. B thereto.  Movants' Motion apparently does not seek to litigate that issue.  In any event, whether or not the *W2GI* case should proceed as the first-filed case is properly before the first-filed Delaware Court.  To the extent necessary or appropriate, GeoTag incorporates by reference its Motion to Dismiss the *W2GI* case.
[3] Ex. 2, ¶ 7, Ex. 3, ¶ 6. As the Court is aware, Frisco is located within the Eastern District of Texas.

The first suit alleging infringement of the '474 patent was brought by GeoTag's predecessor in interest on November 15, 2006 in this Court. The case was styled *Geomas (International) Limited v. Idearc Media Services West, Inc.*, No. 2:06-cv-00475-CE. After approximately three years of litigation (which included a *Markman* order[4] construing the claims of the '474 patent) and less than a month before trial, the case was settled amicably.

GeoTag's licensing and enforcement program for the '474 patent has occurred in four phases in this Court. The first phase was the above-referenced *GeoMas* case in 2006 - 2009. The second, third and fourth phases occurred in July 2010, December 2010 and March 2011, respectively. Including this action, there are presently eleven actions pending in this court involving infringement of the '474 patent. The *Frontier* and *YellowPages.com* cases went to status conferences in February of this year, and both have docket control orders pending.[5] Presently, the remaining cases are in line for scheduling conference before this Court.

In March 2011, while ten cases involving the '474 patent were pending in this District, two declaratory judgment actions were filed against GeoTag in Delaware – one by Microsoft and Google and another by W2GI.[6] GeoTag has moved to dismiss the *Microsoft* case for lack of subject matter jurisdiction, due to the lack of a justiciable controversy; and, alternatively, GeoTag has moved to transfer venue of the *Microsoft* case to this Court. Ex. 4. GeoTag's basis for seeking dismissal of the *Microsoft* case includes that GeoTag has never accused any defendant in these cases of infringing the '474 patent based upon of Bing Maps or Google Maps. Ex. 4, p. 2 & Ex. 5 at ¶ 14. None of the complaints in the actions before this Court accuse any defendant of infringement based upon Bing Maps or Google Maps. Ex. 4, p. 2 & Ex. 5 ¶ 15. To

---

[4] Case No. 2:06-cv-475-CE, Dkt No. 110.
[5] No. 2:10-cv-00265-TJW Dkt No. 159 & No. 2:10-cv-00272-TJW, Dkt No. 32.
[6] Those actions are styled, *Microsoft Corporation et al v. GeoTag Inc.*, No. 1:11-cv-00175-GMS, filed 03/01/2011; and *W2GI, Inc. v. Geo Tag Inc.*, No. 1:11-cv-00223-GMS, filed. 03/14/2011.

the extent any defendants in the Texas Actions display Bing Maps or Google Maps on their websites, those maps or mapping services are not, and have never been, accused of infringing the '474 patent by GeoTag. Ex. 4, p. 2 & Ex. 5 ¶ 16.

GeoTag has also moved to dismiss the *W2GI* case; and, alternatively, has moved to transfer venue of the *W2GI* action to this Court. Ex. 6. GeoTag's basis for seeking dismissal of the *W2GI* case includes that W2GI filed suit in Delaware to enhance its position in settlement negotiations after lulling GeoTag into inaction with a draft NDA and stand-still agreement. Ex. 1, pp. 6-7 & Ex. B thereto.

### III. RESPONSE TO MOVANTS' "PRELIMINARY STATEMENT."[7]

Movants argue that GeoTag's infringement contentions in the Texas cases are limited to "store locators." This assertion is incorrect. GeoTag's infringement contentions in this case include, but are not limited to, store locators. Ex. 7, ¶ 2. Presumably the motive behind making this factually incorrect assertion is to more closely tie Movants' products and/or services to the vaguely defined "Mapping Services" that Movants' allege are provided by Microsoft, Google and/or W2GI in connection with certain store locators.

Movants state that the *Microsoft* case in Delaware "seek[s] a declaration that the '474 patent is invalid and is not infringed by use of their web mapping services," and that W2GI has filed a "nearly identical action." However, this does not support Movants' argument that the disposition of the *Microsoft* or *W2GI* cases will resolve the infringement issues in the Texas cases, even if the Texas defendants are shown to make *some* use of such "web mapping services" *somewhere* on their websites. To put it another way, it is far different to request a declaration that

---

[7] In what is styled as a "Preliminary Statement," Movants make a plethora of arguments and allegations. It is unclear how this "Preliminary Statement" ties into Movants' legal analysis or how it purports to justify the relief requested. In any event, since this is a Response to the Motion, GeoTag will respond.

alleged customers do not infringe the '474 patent, versus merely requesting a declaration that the alleged customers' uses of certain services does not constitute infringement. There has been no showing that any resolution of the *Microsoft* or *W2GI* cases would resolve infringement for any defendant (except W2GI) in these cases.

Movants allege that the "Delaware Plaintiffs" "provide" what is vaguely referred to as "Mapping Services," and that they "license the Mapping Services to their customers for use in displaying the locations of the customer's retail stores or places of business." In addition to lacking factual support, this allegation is vacuous. Movants dance around, but fail to address, whether the Delaware Plaintiffs are manufacturers, in whole or part, of the systems and methods accused of infringement in these cases.

Movants allege that someone conducted a "survey" and that "approximately 64%" of the Defendants in these cases are "customers" of Microsoft, Google and W2GI; and that "approximately 36%" of the Defendants are "customers" of other "Providers," some of whom are defendants in these cases, and some of whom are not. What is notably missing from these allegations is evidentiary proof that anything provided by these alleged "Providers" to their alleged "Customers" constitutes a system or method accused of infringement in these cases.

Further, one of the alleged "Providers," No Where Systems, is a named Defendant in the *GeoTag v. Georgio Armani, S.P.A., et al.* case pending before this Court. Movants declined to state which other "Providers" making up their alleged 36% number are also named Defendants in cases before this Court. It would make no sense to stay these cases under the "customer exception" if the alleged "Provider" is already a party to these cases. In an attempt to shore up this glaring flaw in their position, Movants allege that, "[t]o Movants' knowledge, their licensed

5

Mapping Services operate in a similar manner, regardless of Provider." Here again, Movants make sweeping allegations without factual support.

Defendants allege that the "Providers, who host the Mapping Services and who alone control their design and production, are the real defendants in this patent infringement suit." Yet again, Movants make sweeping allegations without factual support.

Defendants contend that their allegations are bolstered because GeoTag "refus[ed] to grant a covenant not to sue to the Providers' customers." This allegation is either mis-informed or it constitutes a gross distortion of the facts. As noted in Exhibit 8, Google and Microsoft's proposed covenant was overbroad, including in demanding that GeoTag grant Google and Microsoft licenses for the duration of the '474 patent in exchange for dropping their preemptive Delaware declaratory action. Ex. 8, p. 9 & Ex. A thereto. Far from refusing a covenant not to sue, GeoTag proposed a covenant of reasonable scope that mirrors the declaratory relief requested by Microsoft and Google. *Id.* However, Microsoft and Google have declined to enter into GeoTag's proposed covenant.

Movants allege that the "vast majority of discovery must be sought from the Providers." Here again, Movants make sweeping allegations but have failed to provide any factual support.

Movants allege that without a stay, "the Court may see a deluge of similar, customer-targeting suits." This constitutes rank speculation, and lacks any factual support.

Defendants conclude their "Preliminary Statement" by alleging that a stay would "limit" litigation over the '474 patent to the "real defendants," and that if the Delaware Plaintiffs prevail, "GeoTag will likely have no further basis to proceed before this Court." Again, Movants make sweeping allegations without factual support, including because there has been no meaningful

6

evidentiary support for Movants' argument, and because many Defendants in these cases are not even alleged to be "customers" of Microsoft, Google and/or W2GI.

## IV. ARGUMENT.

### A. The declarations relied upon by Movants fail to support their arguments.

Movants have the burden to show that a stay is appropriate. However, the vast majority of the Movants' arguments are merely unsupported, unsworn lawyer argument that carry no evidentiary weight. The only sworn evidence put forth by Movants are the Cuesta and Kinnan declarations. These declarations are best described as carefully written smoke and mirrors, and they fail to support Movants' allegations or arguments. The *sum total* of the averments in the Cuesta and Kinnan declarations is that *some* defendants in these Texas cases make *some* use of Bing Maps or Google Maps, and there are multiple, locator-related features that Bing Maps or Google Maps are *capable of* providing. A complete explanation of these declarations, including what they fail to show, is at Exhibit 8, pp. 1-6, which is incorporated herein by reference.

### B. Movants have not presented any evidence that a judgment in the *W2GI* case in Delaware would be dispositive, or even majorly dispositive, of Plaintiff's infringement claims against any Defendant except *W2GI*.

Movants' rely entirely upon unsworn lawyer argument in asserting that the *W2GI* case in Delaware (assuming it survives GeoTag's pending motion to dismiss) will dispose of GeoTag's infringement claims against an unspecified number of Defendants in unspecified cases who are allegedly W2GI's customers for unspecified products or services. Defendants have not presented any evidence whatsoever that a judgment in the *W2GI* case will be dispositive, or even majorly dispositive, of Plaintiff's infringement claims against any defendant except W2GI.

### C. Defendants have not shown any sound reason why these first-filed cases should not proceed.

7

This Court has noted there is some confusion as to whether the Federal Circuit's first-to-file doctrine governs in patent cases.[8] Under either Fifth or Federal Circuit law, these cases should proceed, including as the first filed cases.[9] "The 'first-to-file' rule is grounded in principles of comity and sound judicial administration."[10] "Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap."[11] The Federal Circuit has held that in patent cases, the "forum of the first-filed case is favored, unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise."[12] "There must, however, be sound reason that would make it unjust or inefficient to continue the first-filed action." *Id.* Defendants have shown no sound reason why this case should be stayed. The only arguments apparently put forth by Defendants are judicial efficiency and the customer suit exception. However, Defendants have not shown that judicial efficiency would be served by staying this case. Further, they have not shown the customer suit exception to be applicable.

### D. Judicial efficiency would not be served by staying this case.

As noted above, Movants' Motion consists almost entirely of unsupported lawyer argument. Movants have not shown a judgment in the *Microsoft* case will be dispositive, or even majorly dispositive, of GeoTag's infringement claims against any Defendant in this case. Further, Movants have not shown that a judgment in the *W2GI* case will be dispositive, or even majorly dispositive, of GeoTag's infringement claims against any Defendant except W2GI.

---

[8] *E-Z-EM, Inc. v. Mallinckrodt, Inc.*, 2010 WL 1378820, *1, n. 1 (E.D. Tex. February 26, 2010).
[9] As noted at fn. 2 above, GeoTag does not dispute that W2GI sued GeoTag a day before GeoTag sued W2GI. However, pending before the Delaware court is GeoTag's motion to dismiss the *W2GI* case based on, *inter alia*, the bad faith exception to the first-filed doctrine.
[10] *Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir.1997).
[11] *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir.1999).
[12] *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 936 (Fed.Cir.1993)

### E. Movants have not shown that the customer suit exception is applicable.

Under the customer suit exception, "litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer."[13] Put simply, there has been no showing this is a customer suit. In evaluating the customer suit exception, "a primary question is whether the issues and parties are such that the disposition in one case would be dispositive in the other."[14] The customer suit exception can apply only when the second-filing declaratory plaintiff is a manufacturer of the infringing apparatus, or when a customer is a "mere reseller" of a manufacturer's product. *Id.*

Even if Movants had shown that one or more "Providers" supply *some* components of systems and methods accused of infringement by *some* Defendants in this case (which they have not), the customer suit exception should not apply when a manufacturer's product is only one component of a defendant's finished product.[15] As in *Kahn*, *Air Products* and *CSIRO*, there has been no showing the Defendants are mere "customers" or "mere resellers" of complete systems or methods supplied by litigants in competing suits. *See id.* In addition, under any set of circumstances, damages in lawsuits against Microsoft and Google would be far different from damages in these cases primarily directed to various aspects of company websites. *See id.*

Movants have not shown that Google, Microsoft or W2GI are manufacturers of complete methods or systems made or used by specific Defendants. Likewise, Movants have not shown that any Defendant is reselling methods or systems accused of infringement and made by Google, Microsoft or W2GI. Movants have not shown that the customer suit exception applies.

---

[13] *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed.Cir.1990).
[14] *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (*citing Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180 (1952)).
[15] *See Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081-82 (Fed. Cir. 1989); *Microsoft Corp. v. Commonwealth Scientific and Indus. Research Organisation*, 2007 WL 4376104, *2 (E.D. Tex. Dec. 13, 2007); *Air Prods. and Chems., Inc. v. MG Nitrogen Services., Inc.*, 133 F.Supp.2d 354 (D.Del.2001).

**F.   Even if Movants had shown the applicability of the customer suit exception (which they have not), they have not shown that these cases should be stayed.**

The parties agree that the guiding principles in cases applying the customer suit exception are efficiency and judicial economy.[16] Movants argue, erroneously, that *Tegic* requires a three part test. However, *Tegic* was decided based upon the guiding principles of efficiency and judicial economy, including as informed by the "primary question" of "whether the issues and parties are such that the disposition of one case would be dispositive of the other."[17]

The three part test urged by Movants is merely Movants recitation of the facts of that case crafted into a "test." However, even under the three part test urged by Movants (and assuming *arguendo* this is a "customer suit," which it is not), there has been no showing that the customer suit exception should be applied to stay these cases.

**1.   There has been no showing that a stay would promote efficiency or judicial economy, or that the Delaware cases would be dispositive, or even majorly dispositive, of the Defendants before this Court.**

Setting aside the unsupported lawyer argument that makes up most of their Motion, Movants have failed to provide factual support for their argument that a stay would promote efficiency and judicial economy. The sum total of their evidence regarding Microsoft and Google vis-a-vis defendants in these Texas cases is that some of them, most of whom are unidentified, make some use of Bing Maps or Google Maps, and there are multiple, locator-related features that Bing Maps or Google Maps are capable of providing. The evidence put forth regarding the involvement of W2GI and other "Providers" with the accused systems and methods of any defendants is even more sparse – in fact there is no such evidence at all. Including due to Movants' reliance upon unsupported lawyer argument in lieu of evidence, there has been no

---

[16] *Tegic Comm. Corp. v. Bd. of Regents of the Univ. of Texas*, 458 F.3d 1335, 1343 (Fed. Cir. 2006).
[17] *Id.* (*citing Katz v. Siegler*, 909 F.2d 1459, 1463 (Fed.Cir.1990)).

showing that a judgment in the *Microsoft* or *W2GI* cases would be dispositive of the infringement of any Defendant (except W2GI) in these cases.

### 2. Even if Movants' suggested three part test under *Tegic* was applicable, there has been no factual showing that Movants are "peripheral parties."

Movants allege that, "[n]early all the Movants in this case are mere peripheral parties because they do nothing more than license and repackage web-based Mapping Services that are owned, operated, managed, and controlled by Providers." Here again, Movants make sweeping allegations without factual support. Movants' reliance upon the *Kodak*[18] case is misplaced because Movants rely upon argument, not evidence, to support the assertion that the facts of these cases are analogous to *Kodak*. The evidence cited by Defendants are the Cuesta and Kinnan declarations, but, as demonstrated above, the sum total of the Cuesta and Kinnan declarations is that some defendants, most of whom are unidentified, make some use of Bing Maps or Google Maps, and there are multiple, locator-related features that Bing Maps or Google Maps are capable of providing.

Movants also point out that when a Google Map is displayed on someone's website, it contains the "powered by Google" slogan and a link to Google's terms of use. However, Movants fail to tie these "facts" to any infringement issues in these cases. Moreover, Movants are operating under a misinformed understanding of GeoTag's infringement positions in these cases. *See* Section II above, at references to Ex. 4*,* p. 2 & Ex. 5 at ¶ 14-16*.* The "powered by Google" slogan and a link to Google's terms of use on a website does not inform anything meaningful about GeoTag's infringement contentions or any technical issues relevant to them.

Movants state that "[t]he peripheral nature of the Movants involvement in the transaction between the Providers and the end user is further evidenced by Microsoft and Google's brief

---

[18] *See Screening, LLC v. Eastman Kodak Co.*, 2010 WL 3516106, at *3 (N.D. Ill. Sept. 1, 2010)

filed in opposition to GeoTag's motion to dismiss the Declaratory Judgment Action." This statement is so vacuous that GeoTag is at a loss as how to respond – except to point to GeoTag's Reply to the foregoing Response, which is Ex. 8 hereto. Including for the reasons shown in GeoTag's Reply, Microsoft/Google's Responsive brief in the *Microsoft* case lacks merit.

In support of their "peripheral" argument, Movants repeat their argument that GeoTag refused to enter into a covenant not to sue relative to Microsoft and Google. For the reasons noted in Section II above, this argument is baseless and uninformed.

Movants argue that "[s]ince the the accused websites merely repackage Mapping Services, the Movants likely have little to no documentation relevant to the alleged infringement in their possession," and that "the bulk—if not all—of the documents regarding the operation of the accused websites are located at the Providers' headquarters." Here again, Movants make sweeping allegations without factual support.

Movants argue that "[t]his is not a case where the manufacturer's software makes up only part of the infringing device and direct infringement must be established as to the customers before plaintiff may pursue a claim for indirect infringement against the manufacturers," because the "Mapping Services comprise the whole of Movants' store locater services, not a mere component." Here again, Movants make sweeping allegations without factual support.

In sum, Movants have failed to provide factual evidence supporting their argument that they are "passive portals to the Providers' Mapping Services and are merely peripheral."

> **3. Even if Movants' suggested three part test under *Tegic* was applicable, there has been no factual showing that the "manufacturer suit would resolve the major issues."**

Movants have failed to provide factual evidence establishing that judgments in the *Microsoft* or *W2GI* cases would resolve any issues, much less major issues, in these cases, except

of course the issue of W2GI's infringement. Movants state that if a stay is granted, they will "agree to be bound by the final determination of *validity or invalidity*" in the *Microsoft* and *W2GI* cases. However, Movants do not state that they will agree to be bound by any determination of *infringement* in the *Microsoft* and *W2GI*, which perhaps makes sense because there has been no showing that a determination of infringement in the Delaware actions would be meaningfully binding on any Defendant before this Court. Further, none of the many non-movants who would also be stayed, if the Motion were granted, have agreed to be bound by any determinations made in Delaware.

Movants argue that "[s]taying the present actions will maximize judicial efficiency because resolution of the manufacturer's suits will dispose of the major issues as to all or a majority of the defendants." Here again, Movants make sweeping allegations without factual support.

Movants argue that, "[i]f the Delaware Plaintiffs are successful, all nine Texas actions may be rendered moot" because "a finding of patent invalidity would obviate any further litigation of the patent." While it is true that a final determination of invalidity on appeal would moot any pending cases, this has nothing to do with the customer suit exception, and this consideration has never held sway in deciding whether to stay a co-pending action. Further, by the same token, a final determination on appeal of patent invalidity in any of these cases would moot any pending cases in Delaware.

Movants argue that "a finding of noninfringement would resolve the claims against at least the Delaware Plaintiffs' customers and potentially all defendants regardless of Provider." Movants again make sweeping allegations without factual support.

Movants argue that "if the Delaware Plaintiffs are found to infringe, that outcome will still exhaust the claims against 64% of the Texas defendants, because GeoTag cannot receive a double recovery for the same act of infringement by manufacturer and customer." Although the doctrine of exhaustion could be applicable (vis-a-vis either the manufacturer or the customer) in an actual customer suit situation, as GeoTag has set forth in detail above, there has been no showing that this is a customer suit. As noted above, Movants have not shown that any "Providers" are manufacturers of accused systems and methods.

### 4. Even if Movants' suggested three part test under *Tegic* was applicable, there has been no factual showing that a stay will promote judicial economy.

On the issue of judicial economy, Movants merely rehash the same arguments as above. However, as noted in Section F.1, Movants' merely rely upon unsupported lawyer argument, and a stay would not promote judicial efficiency.

### G. A stay would unduly prejudice GeoTag.

Movants have not shown a judgment in the *Microsoft* or *W2GI* cases will be dispositive of all or even a major part of GeoTag's claims against any Defendant in these cases except *W2GI*. Even if the *Microsoft* and *W2GI* cases survive the pending motions to dismiss, neither case has a schedule. It would be unduly prejudicial for this litigation to be put on hold for up to three years[19] while the Delaware cases proceed (if those suits proceed). Further, even if Movants' unsupported arguments were accepted as fact (which would be improper), at most Movants allege that only *some* of the infringement claims in this case would be disposed of by a

---

[19] GeoTag asks the Court to take judicial notice of the Judicial Caseload Statistics posted on the website of the federal court system shows that as of December 2010, the median time to trial for a civil case in the District of Delaware was 26.5 months. http://www.uscourts.gov/viewer.aspx?doc=/cgi-bin/cmsd2010Dec.pl. Further, GeoTag asks the Court to take judicial notice of the Judicial Caseload Statistics posted on the website of the federal court system that as of December 2010, the median time from filing notice of appeal to disposition was 9.7 months.http://www.uscourts.gov/viewer.aspx?doc=/cgi-bin/cmsa2010Dec.pl.

judgment in the *Microsoft* and/or *W2GI* cases. Thus, even if Movants' arguments were accepted as fact, it still would be unduly prejudicial for these cases to be put on hold for potentially three years.

### H. Movants' reliance on *Southwire* is erroneous.

Movants cite *Southwire* for a three part test for whether a stay is appropriate.[20] However, *Southwire* involves factors which courts typically consider "in deciding whether to stay litigation pending reexamination."[21] The present case does not involve a reexamination proceeding, so the test from *Southwire* and its predecessor *Soverain* is inapplicable.[22] Even if the *Southwire* test was erroneously applied, for the reasons stated above, a stay of these cases would unduly prejudice GeoTag. Further, even if the *Southwire* test was applicable, whether discovery is complete and whether a trial date has been set are inappropriate considerations under the present circumstances. For reexaminations, it is perhaps relevant whether discovery is complete and whether a trial date has been set. Yet in the present case, Movants seek a stay of this litigation in favor of allegedly competing litigation. In the allegedly competing litigation, there has also been no discovery, and no trial date has been set. Ex. 7, ¶ 1. This factor is inapplicable, or at worst neutral. Finally, even if *Southwire* was applicable, for the many reasons stated above, there has been no showing that a stay will result in simplifying the infringement issues in these cases.

### V. CONCLUSION.

---

[20] *See Southwire Co. v. Cerro Wire, Inc.*, 750 F.Supp.2d 775 (E.D. Tex. 2010). The *Southwire* test weighs (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party, (2) whether a stay will simplify the issues in question and trial of the case, and (3) whether discovery is complete and whether a trial date has been set. *Id.* at 776.

[21] *Id. See Soverain Software LLC v. Amazon.com, Inc.*, 356 F.Supp.2d 660, 662 (E.D.Tex.2005) (same).

[22] A case involving allegedly competing suits in different fora is far different from a reexamination proceeding. In a reexamination proceeding, the U.S. Patent & Trademark Office has at least determined that there is a substantial question of patentability for the claims of the patent at issue, and it may have even rejected those claims. Such circumstances simply have nothing to do with this case.

For the foregoing reasons, including that Movants have failed to meet their burden with facts or evidence, their Motion to Stay should be denied.

July 12, 2011

Respectfully submitted,

GEOTAG, INC.

By: /s/ *John J. Edmonds*
John J. Edmonds – Lead Counsel
Texas Bar No. 789758
Michael J. Collins
Texas Bar No. 4614510
Stephen F. Schlather
Texas Bar No. 24007993
COLLINS, EDMONDS & POGORZELSKI, PLLC
1616 S. Voss Road, Suite 125
Houston, Texas 77057
Telephone: (281) 501-3425
Facsimile: (832) 415-2535
jedmonds@cepiplaw.com
mcollins@cepiplaw.com
sschlather@cepiplaw.com

Otis Carroll
Texas Bar No. 3895700
Deborah Race
State Bar No. 16448700
Ireland, Carroll & Kelley, P.C. [23]
6101 S. Broadway, Suite 500
Tyler, Texas 75703
Tel: (903) 561-1600
Fax: (903) 581-1071
Email: fedserv@icklaw.com

L. Charles van Cleef
Texas Bar No. 786305
COOPER & VAN CLEEF, PLLC
500 N Second St.
Longview, TX 75601
(903) 248-8244
(903) 248-8249 fax
charles@coopervancleef.com

---

[23] Ireland Carroll is counsel of record for GeoTag in the *Frontier, Yellowpages.com, Georgio Armani, Starbucks, Rent-a-Center, Inc., Western Union, Royal Purple* and *W2GI* cases.

                  ATTORNEYS FOR PLAINTIFF
                  GEOTAG, INC.

CERTIFICATE OF SERVICE

  I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

July 12, 2011         /s/ John J. Edmonds
                John J. Edmonds