# EXHIBIT H

```
 1                 IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF TEXAS
 2                        MARSHALL DIVISION

 3   GEOTAG, INC.                    . CIVIL DOCKET NO. 2:10CV265
                                     .
 4   VS.                             . TEXARKANA, TEXAS
                                     . NOVEMBER 9, 2011
 5   FRONTIER COMMUNICATIONS         . 11:14 A.M.
     CORP., ET AL                    .
 6
     GEOTAG, INC.                    .
 7                                   .
     VS.                             . CIVIL DOCKET NO. 2:10CV272
 8                                   .
     YELLOWPAGES.COM LLC             .
 9
     GEOTAG, INC.                    .
10                                   .
     VS.                             .  CIVIL DOCKET NO. 2:10CV569
11                                   .
     GEORGIO ARMANI S.P.A., ET AL    .
12
     GEOTAG, INC.                    .
13                                   .
     VS.                             .  CIVIL DOCKET NO. 2:10CV570
14                                   .
     AROMATIQUE, INC., ET AL         .
15
     GEOTAG, INC.                    .
16                                   .
     VS.                             .  CIVIL DOCKET NO. 2:10CV571
17                                   .
     GUCCI AMERICA, INC., ET AL      .
18
     GEOTAG, INC.                    .
19                                   .
     VS.                             .  CIVIL DOCKET NO. 2:10CV572
20                                   .
     STARBUCKS CORP., ET AL          .
21
     GEOTAG, INC.                    .
22                                   .
     VS.                             .  CIVIL DOCKET NO. 2:10CV573
23                                   .
     RENT-A-CENTER, INC., ET AL      .
24
     GEOTAG, INC.                    .
25                                   .
```

EXHIBIT H

```
 1 │ VS.                              .  CIVIL DOCKET NO. 2:10CV574
   │                                  .
 2 │ THE WESTERN UNION COMPANY,       .
   │ ET AL
 3 │
   │ GEOTAG, INC.                     .
 4 │                                  .
   │ VS.                              .  CIVIL DOCKET NO. 2:10CV575
 5 │                                  .
   │ ROYAL PURPLE, INC., ET AL        .
 6 │
   │ GEOTAG, INC.                     .
 7 │                                  .
   │ VS.                              .  CIVIL DOCKET NO. 2:10CV587
 8 │                                  .
   │ YAKIRA, L.L.C., ET AL            .
 9 │
   │ GEOTAG, INC.                     .
10 │                                  .
   │ VS.                              .  CIVIL DOCKET NO. 2:11CV175
11 │                                  .
   │ WHERE 2 GET IT, INC., ET AL      .
12 │
   │
13 │
   │
14 │ APPEARANCES:
   │
15 │ FOR PLAINTIFF:               [SEE SIGN-IN SHEETS ATTACHED
   │                               TO MINUTES]
16 │
   │
17 │
   │
18 │ FOR DEFENDANTS:              [SEE SIGN-IN SHEETS ATTACHED
   │                               TO MINUTES]
19 │
   │
20 │
   │ COURT REPORTER:             MS. LIBBY CRAWFORD, CSR, CVR
21 │                             OFFICIAL COURT REPORTER
   │                             500 STATE LINE AVENUE
22 │                             TEXARKANA, TX.  75501
   │                             903.794.4067 EXT. 237
23 │
   │
24 │
   │ PROCEEDINGS RECORDED BY STENOMASK, TRANSCRIPT PRODUCED WITH
25 │ CAT SYSTEM.
```

1                                    **INDEX**

2    Court..................................................  4

3    Motion by Ms. Ross.....................................  5

4    Response by Mr. Buether................................ 15

5    Reply by Ms. Ross..................................... 25

6    Court................................................. 26

7    Reporter's Certification.............................. 33

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>P R O C E E D I N G S</u>

**TEXARKANA, TEXAS**

**NOVEMBER 9, 2011**

1     (Open court)

2        THE COURT: Please be seated.  I apologize yet again

for running a little late.  For those of you present during my

first case of the morning, you understand why.

       Very well, I look around and people ask me why on earth

would I retire, and all I've got to do is -- all I have to do

is look at these files.

       Anyway, we are here for a scheduling conference and also

there is a Motion to Stay.  I am going to change the topic or

order of topics slightly.  I believe I would benefit from

hearing the Motion to Stay first and have a little more

history concerning this case, then I've got some comments

about the scheduling that will follow.

       So who is going to go forward on the Motion to Stay?

         MS. ROSS: I apologize, Your Honor.  We were having a

little bit of technical difficulty.

         THE COURT: Did I give fifteen minutes a side on

this?  Is that correct?

         MS. ROSS: You did, Your Honor. And I hope I won't --

         THE COURT: And you may reserve some reply time if

you wish.

         MS. ROSS: Thank you.

1         THE COURT: Are you speaking on behalf of everyone

2    that joined in the motion?

3         MS. ROSS: I am, Your Honor.  My name is Evelyn Ross

4    with Vinson & Elkins on behalf of the Movants.  The stay

5    should be granted in favor of the --

6         THE COURT: And are all the Defendants --  I

7    apologize.

8         MS. ROSS: No problem.

9         THE COURT: Are all the Defendants in the case

10   Movants, or part of the Defendants?  If so, how many?

11        MS. ROSS: They are not, Your Honor. I believe there

12   are 81 moving Defendants.

13        THE COURT: Eighty-one.  Thank you.

14        MS. ROSS: The stay should be granted in favor of the

15   moving Defendants and the Delaware action because the real

16   parties in interest in this matter, the service providers, are

17   in Delaware and they have affirmatively elected to defend

18   their products and services there, in part, because they have

19   received more than 200 indemnity requests from the Texas

20   Defendants, and they expect to receive thousands more.

21      The same patents are at issue in Delaware -- excuse me,

22   the same --

23        THE COURT: Well, tell me what's going on in

24   Delaware.  I know from reading the papers there was a motion,

25   perhaps a jurisdictional motion filed, and in the alternative,

1  perhaps a venue motion filed by our Plaintiff in this case.

2  Has the Delaware Court acted on that yet?

3      MS. ROSS: The Court has not acted on either of those

4  motions yet.  The same patent is at issue in Delaware, the

5  same technology is at issue in Delaware, and the majority of

6  the Texas Defendants here in these cases use the products and

7  services of the Delaware providers.

8      THE COURT: So if I understand, what you are

9  requesting is stay this case as to 81 Defendants, and what do

10 I do with, or some other judge, with the other 300 Defendants?

11     MS. ROSS: Your Honor, it's our position, I believe,

12 that you have inherent powers in the Court, and should you

13 choose to stay all now 18 --

14     THE COURT: So essentially what you are saying is

15 stay -- grant our motion, then stay everything.  Is that what

16 you are --

17     MS. ROSS: If that's what Your Honor pleases, yes,

18 sir.  As of the briefing for this motion, GeoTag had accused

19 some 365 Defendants in Texas for providing locator services on

20 their websites.  During the briefing, the Movants warned this

21 Court that if left unchecked, GeoTag would continue to add

22 more and more Defendants to the Texas actions.  GeoTag

23 countered that the Movants' accusations were just rank

24 speculation.  However, and as expected, GeoTag continues to

25 bombard this Court with additional suits and a multitude of

1    additional Defendants, the most recent being the addition of

2    41 Defendants to an existing case last week.  And by adding

3    these new Defendants to cases that have --

4              THE COURT: Well, what are we up to defendant-wise in

5    all the cases?

6              MS. ROSS: I believe we are at about 467.

7              MR. DURST: It's more than that.

8              MS. ROSS: Oh, it's more than that.

9              MR. DURST: It's well over 500.

10             MS. ROSS: Excuse me, Your Honor.  Mr. Durst tells me

11   that it's over 500 now.  By adding these new Defendants to

12   existing cases that were filed before September 16, the date

13   of enactment of the AIA, GeoTag is attempting to avoid the

14   mandates required under the AIA.  These new parties could not

15   be joined together in one action because they are unrelated.

16   Had GeoTag filed separate actions against each defendant

17   group, the Court would have seen many, many more lawsuits.

18        The fact of the matter is, is the number of lawsuits and

19   the number of Defendants pending before this Court is

20   unmanageable for both the Court and the parties.

21        GeoTag has explained in its briefing that its strategy

22   and its efforts in Texas constitute its licensing and

23   enforcement program.  In *Parallel Networks,* Judge Davis

24   recognized the inherent difficulties that exist with such a

25   strategy.  Specifically, he noted that it makes the cost of

1    defense prohibitive for the Defendants because even the most

2    simple task, such as a discovery order, require hours and

3    hours of attorney time.

4        As you can see here, Your Honor, I'm not sure how many

5    attorneys are here, but it's well over 50.  Moreover, he noted

6    that it places the defendants in a quandary.  He said, look,

7    the defendants are faced with a choice.  They either defend

8    the case at exorbitant costs or they settle for cost of

9    defense regardless of the liability.

10       The *Parallel Networks* case involved a little over a

11   hundred defendants.  The problems here are compounded by the

12   more than 400 defendants in the Texas actions, and it looks

13   like those numbers are going to continue to rise.  Here, we

14   have the advantage that three of the service providers have

15   affirmatively elected to file suit in Delaware and they stand

16   ready to defend their products and services.  The customer --

17            THE COURT: Will we hear from -- we hear obviously

18   from the Plaintiff that this motion is probably premature and

19   all that supports it is, to use their terminology, lawyers'

20   talk.  I assume, one, you feel it's not premature.  If so,

21   why?

22            MS. ROSS: Well, it's not premature --

23            THE COURT: Obviously in the vast majority of these

24   cases, I believe there are two cases, the *Frontier* case and

25   the other defendant slips me --

1     MS. ROSS: I believe it's the *Yellowpages* case, Your

2  Honor.

3     THE COURT: -- Yellowpages, there have been

4  infringement contentions filed by the Plaintiff, but none in

5  the rest of the cases.  So, I guess, why do you feel that this

6  is ripe for a decision?  Other than obviously this is going to

7  be a hard case to manage, but over the years if I had stayed

8  every hard case I had to manage, my docket would have been a

9  lot smaller.

10     MS. ROSS: That's understandable, Your Honor.  The

11  reason why this case needs to be stayed is because for the

12  vast majority of the Defendants that exist in the 18 cases in

13  front of this Court, the issues will be significantly

14  narrowed.  The potential for damages could be exhaustive.

15     THE COURT: But how do we know that?

16     MS. ROSS: We know that based on the declarations

17  that Microsoft and Google and Where 2 Get It provided the

18  Delaware court in response to GeoTag's Motion to Dismiss.

19  They explain in those declarations that they are the real

20  parties in interest.  They explain to the court in Delaware

21  that they are the ones that host the entire functionality of

22  the accused products on their website, and that the customer

23  involvement is really limited to providing store information,

24  store location information that is hosted on Microsoft servers

25  and databases.

1       The customer suit factors favor a stay in this case.

2   This case presents the classic scenario for the customer suit

3   exception, a case where the customer Defendants are accused

4   and have little, if any, knowledge of the accused products,

5   and a case where the customer Defendants simply resell and

6   repackage products from another entity.  Many of the Texas

7   Defendants are mere customers who simply provide a branded

8   interface to reach the Provider's Locator Services.  The

9   users' search parameters are simply routed to the Provider's

10  Locator Systems and then displayed to the user through the

11  customer's website.  The most relevant knowledge about the

12  accused systems, their design, their operation and their

13  maintenance, involves Google, Microsoft and Where 2 Get It

14  knowhow.

15      As illustrated on this graphic, the online customers, in

16  many instances, act as a mere portal to the location services

17  provided by the Delaware declaratory judgment plaintiffs.  The

18  providers explain to the Delaware court that all material

19  parts of the accused system and methods, that is, the claims,

20  are part of the provider system and no relevant customer

21  specific actions take place.

22      That fact can be illustrated, Your Honor, by this graphic

23  which shows that the Provider's Locator Services encompass the

24  entire service.  In fact, a user can simply bypass the

25  customer's website and go directly to Google or go directly to

1    Microsoft to receive the same information.

2          Now, to avoid the Delaware action, GeoTag implied to the

3    Court in Delaware and to this Court that the allegations in

4    Delaware were simply limited to the presentation of maps by

5    defendants.  While the Delaware Plaintiffs do in some

6    instances provide just mapping services, they also provide the

7    entire accused system that many of the Texas Defendants

8    utilize which prompted their indemnity requests for the

9    Delaware Plaintiffs and also prompted --

10          THE COURT: What about the some 36 percent of the

11   Defendants that don't use these products, what -- how does the

12   Delaware action, other than putting it off for a period of

13   time, help us in that regard, other than obviously the patent

14   is found invalid, I guess, is one possibility, but --

15          MS. ROSS: Exactly.  And then in that instance it

16   would moot the entire case here.  It would certainly limit

17   issues regarding enforceability and claim construction.  There

18   may be no need at all for this Court after Judge Everingham's

19   earlier Order in the *Geomas* case, a potential Order by Your

20   Honor in the Yellowpages and Frontier cases, and then also the

21   possibility of an Order in Delaware, there may actually be no

22   other claim construction necessary once you get down to the

23   remaining Defendants.

24          THE COURT: I bet we have a lot of Defendants that

25   are going to say they want their day in court on claim

1    construction, would be my guess, but --

2              MS. ROSS: That's true, Your Honor, but the fact

3    remains that at the end of the day the issues would be

4    significantly narrowed in the later actions.

5         The real issue is, Your Honor, that GeoTag does not want

6    to be faced with defending this action in Delaware against the

7    real parties in interest in part because they have the

8    resources to defend this case, but also because they have the

9    motivation to defend this case wholeheartedly, while GeoTag

10   would rather proceed with their licensing and enforcement

11   program with the goal of leveraging these unmanageable

12   lawsuits into cost of defense settlements.

13        I think we can skip this.  We talked about this a little

14   bit.  The next two slides simply show the declarations by

15   Google and Microsoft and Where 2 Get It.

16        So as the Federal Circuit explained in *Katz,* it is the

17   manufacturer who is the true party in interest.  It is the

18   party that should be afforded the ability to defend its

19   customers and defend its products.

20        The Provider's Locator Services are a part of their

21   ongoing business efforts.  They have and expect to receive

22   many more indemnity requests from thousands of customers yet

23   to be named.  The manufacturers host and operate and maintain

24   the accused Locator Services.  They design and manufacture

25   these services, and they possess all the relevant knowhow

1  regarding these services.  As such, they are the true parties

2  in interest.

3      The Federal Circuit recently reconfirmed that the

4  manufacturer's case need not resolve every issue.  It just has

5  to have the potential of resolving the major issues.  Here, as

6  we discussed moments before, that possibility exists.  A

7  resolution of the Delaware action could resolve all --

8  possibly part of the issues present in Texas.  An invalidity

9  finding would resolve all 18 cases against more than 450

10  Defendants.  A finding of infringement would resolve the

11  claims against the Texas Defendants who use the Microsoft,

12  Google and Where 2 Get It systems.  A finding of infringement

13  would resolve GeoTag's -- would exhaust GeoTag's claims to

14  damages against those Texas Defendants using Microsoft, Google

15  and Where 2 Get It locator systems.

16      In addition, and this I think is an important factor,

17  they would be able to receive money damages from a broader

18  range of Defendants that have yet to be sued by GeoTag in the

19  Delaware action.

20      And as we touched on earlier, we believe that it would

21  significantly narrow the Court's attention -- significantly

22  narrow the issues that would be present for the Court in claim

23  construction.

24      The Movants have agreed to be bound by the final

25  determination of invalidity.  So in deciding the stay,

1    prejudice to the nonmoving party and simplification of the

2    issues are among the relevant factors that should be

3    considered.

4        All the Texas cases are in their infancy, other than the

5    Yellowpages and Frontier cases.  No trial date has been set.

6    No discovery has been had.  In fact, GeoTag continues to add

7    new suits against new defendants with no end in sight.

8    Therefore, the posture of the Texas cases remains in flux.

9        GeoTag's only claim to prejudice, Your Honor, is that the

10   Texas actions could be on hold for three years.  Even assuming

11   that GeoTag's three year timing is accurate, GeoTag's claim to

12   damages for the unexhausted Texas Defendants would remain

13   untouched.  The stay would provide them with the ability to

14   pursue the real party in interest without the division of

15   resources between the Texas and the Delaware cases, and if

16   GeoTag wins in Delaware, they would obtain money damages from

17   the Delaware Plaintiffs for the Texas Defendants' accusations

18   of infringement, as well as the tens of thousands of other

19   customers yet to be sued.

20       GeoTag's resistance to the Delaware action speaks

21   volumes.  GeoTag's intent and their goal is simply to present

22   the Texas Defendants with this Hobson's choice that Judge

23   Davis referred to.

24       Proceeding with the case in Delaware promotes judicial

25   efficiency in part because it is between GeoTag and the true

1   parties in interest, and is manageable because it involves

2   four parties.   In sharp contrast, the Texas cases present the

3   impossible task for the Court to manage, which is now 18 cases

4   and more than 450 Defendants.

5           THE COURT: I don't know if impossible -- difficult.

6           MS. ROSS: Difficult.   Nearly impossible.   Judicial

7   efficiency is also promoted because the issues will be

8   simplified for trial.   At best, the entirety of the Texas

9   actions could be resolved, and, at worst, issues of claim

10  construction, enforceability, and infringement would be

11  narrowed.

12      With the Court's permission, and if I have any time

13  remaining, I'd like to reserve the balance of my time.

14          THE COURT: You have --

15          THE CLERK: Fourteen seconds.

16          THE COURT: You have fourteen seconds remaining.

17          MS. ROSS: All right.   Thank you very much, Your

18  Honor.

19          THE COURT: Response.

20          MR. BUETHER: I feel like I'm in a dual and they've

21  shot their gun and I just have one bullet left, you know, with

22  only fourteen seconds.

23      I want to make a few remarks about what I just heard,

24  which appears to be an argument for what I would call the mass

25  infringement exemption to a plaintiff's right to choose its

1  defendants and its forum.  Somehow there is a suggestion here

2  that the bigger the victim the less rights you have because it

3  poses some management challenges, which this case certainly

4  does.

5         THE COURT: Well, some is an understatement.

6         MR. BUETHER: Well, it probably is, and it is, but I

7  mean the --

8         THE COURT: Impossible is wrong on one extreme.  Some

9  on the Plaintiff's comment is the other extreme.

10        MR. BUETHER: From a management standpoint, the

11 Defendants' motion or the Movants' motion is really to deal

12 with the management difficulties by burying the case.  They

13 want to hijack our lawsuit and take it to Delaware and then

14 bury it there, because nothing is happening over there and

15 there is no foreseeable action in the future right now.

16        THE COURT: So the motion, I know I asked if there

17 had been a ruling on the motion.  I assume it hasn't been

18 heard at this point?

19        MR. BUETHER: There has been no activity, no sign of

20 life at all there.  And I want to point out that under our

21 proposal for a schedule, we are going to serve all of our

22 infringement contentions on November 21 for all of the

23 Defendants in the cases that are the subject of the scheduling

24 order and that are before you.

25        THE COURT: That's the YellowPage and Frontier?

1          MR. BUETHER: All the cases.

2          THE COURT: Okay, all the cases.

3          MR. BUETHER: All of the cases.  So they will have

4    those infringement contentions, and some of the contentions

5    are -- I think reveal why this is not a good idea to transfer

6    or to stay this case in deference to Delaware.

7          And fundamentally, the courts have acknowledged that

8    these motions to stay based upon the customer suit exception

9    are about a choice of forum issue.  What is -- should there be

10   an exception to the plaintiff's right to choose the forum to

11   litigate its claims?  And the rule is that the first suit,

12   which is this litigation, should have priority absent special

13   circumstances.  And a stay of the first-filed suit is done to

14   prevent a wrong or an injustice.  And the customer suit

15   exception is an exception to the general rule that favors the

16   forum of the first-filed action.  The courts have been

17   consistent on that.

18         The Movants simply haven't shown why it would be

19   beneficial and in the interest of justice, as opposed in their

20   interest, to stay all of these cases, deprive GeoTag of the

21   ability to proceed with its claims and win or lose on them.

22   If they have no merit, they can file summary judgment motions

23   or other motions to deal with that.  If they do, there is no

24   reason to freeze the vast majority of the Defendants that have

25   no association with Microsoft, Google, or Where 2 Get It,

1   because Microsoft --

2            THE COURT: I thought that was only like 34 percent

3   that hadn't.

4            MR. BUETHER: Well, that's a -- actually, that's not

5   an accurate figure.  I mean, I think they said that there

6   are --

7            THE COURT: What is an accurate figure?

8            MR. BUETHER: They said that they have customers.

9   They are customers of Microsoft.  That does not mean that they

10  are being hosted by Microsoft or Google to provide this

11  technology.  And that's a key thing here.  We are not

12  accusing, we are not saying they infringe because they use

13  Google Maps or because they use Bing Maps.  But yet that's

14  what the Delaware dec action alleges, that Bing Maps and

15  Google Maps don't infringe.

16           THE COURT: What are you alleging?

17           MR. BUETHER: We are alleging that these Defendants

18  use a technology on their website.  Often, they are called

19  store finder, or store locator, or dealer locator, which is a

20  database management technology, how you organize your database

21  and whether you organize it in a hierarchical fashion by

22  geography from a larger geographic expanse to a lower one, and

23  then you associate topics with those geographical hierarchies,

24  and then there is a search engine that will execute a search

25  and present to the user information that is sorted by these

1    geographical hierarchies, the topics related to these

2    hierarchies.  There is no claim that if you use Google Maps or

3    Bing Maps, ergo, you infringe.  This is not a mapping patent.

4    It's about database organization and search.

5         And so that's why I say they are hijacking our lawsuit is

6    that they filed a dec action in Delaware saying that we want a

7    declaration that if you use Bing Maps or Google Maps you don't

8    infringe, when we are not making that accusation.  And it's

9    really just an attempt to kill this lawsuit, stifle it, and

10   then freeze it up in Delaware.  And they haven't met their

11   burden, their heavy burden.

12        The Supreme Court in the *Landis* case, 1936, said: parties

13   seeking a stay must make out a clear case of hardship or

14   inequity in being required to go forward.  If there is any

15   possibility that the stay will work damage on another party,

16   that should not happen.  And only in a rare circumstances will

17   a litigant in one cause be compelled to stand aside while a

18   litigant in another settles the rule of law that will define

19   the rights of both.

20        And so the customer exception suit just simply doesn't

21   apply here.  And I think one of the significant factors is the

22   customer suit exception is routinely applied where there is a

23   reseller of a manufactured product.  In fact, that's what the

24   *Tegic* case said.  There are three factors.  One is whether the

25   customer defendant in the earlier filed case is merely a

1    reseller.

2         That's not the case here.  These Defendants that operate

3    these store finders or store locators and other technology. By

4    the way, a careers site where you can search careers

5    geographically or other offers made through their website that

6    have a geographical search function, these are not -- they are

7    not reselling something that Microsoft or Google sells to

8    them.  That's where the customer suit exception applies.

9    Microsoft and Google, at best, are simply providing a

10   component of the technology that infringes.  And Judge Davis

11   in the *CSIRO* case cited the case law that says: merely

12   providing a technological component is not enough to justify

13   the customer suit exception to be applied.

14        The second factor to be considered is whether the

15   customer defendant agrees to be bound by any decision in favor

16   of the patent owner.  Well, we've got a qualified agreement.

17   They'll accept the invalidity determination but not any

18   infringement determination.  So if there is a finding of

19   infringement up there, we are going to have to be down here

20   again litigating that again, unless they accept it.  But they

21   don't agree to be bound by that.  So that factor doesn't favor

22   an exception here.

23        And then finally the other issue is whether the

24   manufacturer is the only source of the infringing product, and

25   that's not true either.  I believe that over 280 Defendants

1  use multiple technology providers to provide their service,

2  and only -- only a handful -- a handful, maybe 50 or 60, use

3  just one single third-party provider.

4      So no factors here justify trying to have the Delaware

5  court decision determine the outcome of the claims against any

6  of the Defendants in this case.  That determination will have

7  virtually no outcome determinative effect.

8      On damages, we are not seeking -- there will be no

9  exhaustion as a result of the outcome in Delaware, because the

10 damages we are seeking from the users are different from what

11 we are seeking against any technology provider.  We are

12 seeking from the technology providers only damages for their

13 own use.  We are not trying to get damages from a Where 2 Get

14 It for their enabling other Defendants to infringe the patent.

15 That is not -- we are seeking only -- we are accusing the

16 providers only of their own infringement.  We are not accusing

17 them of indirect infringement by enabling third parties.

18      And that's another reason why there is not a good reason

19 for a stay here is indirect infringement in Delaware will

20 require intent and notice of the patent and all kinds of

21 issues that aren't required to be litigated down here.  So a

22 trial on indirect infringement in Delaware would tell us very

23 little about what should be done down here.

24      But going back to the fact that the Defendants are not

25 resellers, they are the real parties in interest here, it's

1   their website that is being accused.  It's their customized

2   store locator or careers feature that is built for their

3   website and their content that is being accused of

4   infringement.  So it's their functionality that is unique to

5   them that is being challenged.  This is not a case of

6   Microsoft producing Word on a CD and then sending it to the

7   stores for, you know, the retailers to sell.  And the real

8   value is in the original product made by Microsoft and not the

9   use of that technology by the end user.

10      Here, the real value of this technology resides at the

11   end user retailer location where they are using this

12   technology to drive additional business into their stores.

13   That's where the value is, that's where the damages are, and

14   that makes the retailers the real parties in interest by a

15   long shot.

16      And another point on this is that since Microsoft is

17   indemnifying so many of these customers of theirs, they are

18   here.  You know, the argument about the customer exception is

19   that we should let the manufacturer fight the battle because

20   they have more stake in it than the mere reseller.  And, as I

21   said, that mere reseller doesn't even exist here.  But apart

22   from that, Microsoft is here.  The same vigorous defense that

23   we would see up in Delaware will be presented here.

24      You see all of the august lawyers and law firms that are

25   down here.  This is not a situation where somebody is picking

1    on some poor store front to try and get damages where that

2    company doesn't have the ability to defend itself.  Microsoft

3    is going to be litigating the issues in this court for sure.

4    We know that because they have told you they are indemnifying

5    these parties.

6        So why should we have to trek to Delaware, delay this

7    case substantially and deprive GeoTag of going forward on its

8    claims?  And the reason they want to do that is to delay and

9    stall.  But as you can see, there's no harm to these end-user

10   Defendants that are indemnified by Microsoft by going forward

11   down here, because they are going to have Microsoft's lawyers

12   making their case for them here.

13       The other problem is that the evidence here just doesn't

14   show that what is being accused here is solely provided by

15   Microsoft or Google.  Once again, they focus on their Bing

16   Maps and Google Maps functionality, but that's only -- that's

17   not even -- you don't even need that to infringe.  And, at

18   most, it's only a component or a part of the system or method

19   that is being accused.

20       And that's another good thing to point out here.  We are

21   not dealing with an apparatus claim with a product.  We are

22   dealing with systems and methods which are software based, and

23   most courts that have looked at that have said the customer

24   suit exception really isn't designed for that, because, again,

25   you don't have this mere reseller situation.  You've got some

1  software being provided to an end user in a much larger

2  context, such as a website, for purposes that the manufacturer

3  has no connection with or cares about.  And so the fact that

4  these are method and system claims being asserted here, you

5  need the end users who are the direct infringers and who are

6  the real parties in interest that make the money off of that

7  technology in this case being forced to defend their action,

8  rather than freezing all of that and going up to Delaware to

9  really litigate a phantom lawsuit that doesn't involve what

10  GeoTag is claiming is infringing.  How much time do I have

11  left?

12          THE CLERK: Three minutes.

13          MR. BUETHER: Three minutes.  So the Delaware

14  lawsuits will not resolve GeoTag's infringement and damages

15  claims, and although certainly any dec action on the

16  invalidity side would, but then you would be turning the

17  customer exception into the rule that anyone who files a dec

18  action with a claim of invalidity would say, well, that's

19  where we ought to litigate all this because that will clearly,

20  you know, end the lawsuit if it's successful.  The court, no

21  court has ever accepted that argument to overturn and

22  undermine the plaintiff's choice of forum and the right to

23  litigate the claims where it has chosen, and that is here in

24  Texas.

25      This case is manageable.  We'll get to that shortly, but

1  staying this case will not eliminate duplicative litigation.

2  It will foster it.  It will increase it because we'll have to

3  come back here if there's an infringment finding and

4  relitigate all of that again.  And the courts have said that

5  is a very strong reason not to grant such a stay.

6     If the Court has any further questions --

7           THE COURT: No.  I understand your position.

8           MR. BUETHER: Okay.  Thank you, Your Honor.

9           THE COURT: You have fourteen seconds.

10          MS. ROSS: If I take slightly longer, will you

11 object?

12          THE COURT: Well, it depends on what slightly longer

13 is.

14          MS. ROSS: Okay.  I'll do my best to resolve this

15 very quickly.

16          THE COURT: Well, do you agree the Defendants have

17 not entered into any sort of stipulations concerning

18 infringement and damages, that essentially the stipulation

19 goes as to invalidity?

20          MS. ROSS: I would love to address that, Your Honor.

21 The reason why the Movants have not agreed to be bound by the

22 infringement determination is really complicated.  It's

23 complicated in part because just the coordination among 81

24 Defendants is a difficult task, and getting them to agree to

25 the precise language that existed within the motion itself was

1    an inordinate task.

2         The other reason why --

3              THE COURT: So I guess the answer is no, they haven't

4    agreed?

5              MS. ROSS: Well, they haven't.  I will say, Your

6    Honor, though, that a finding of noninfringement in Delaware

7    would apply to the Defendants in Texas that are using the

8    Microsoft, Google, and Where 2 Get It systems.  A finding of

9    infringement in Delaware would also apply to the Defendants in

10   Texas that are using those specific systems at issue in

11   Delaware.

12        And with respect to Mr. Buether's claim about exhaustion

13   in Delaware, they are trying to argue that the difference in

14   damages theories against a Google, Microsoft, and Where 2 Get

15   It is simply different than a damages theory that would exist

16   against the customer retailers here in Texas.  Exhaustion

17   would still exist.  They would just have a different theory

18   underlying their damages claim.

19             THE COURT: Very well.  I think you have taken enough

20   time or the Plaintiff is going to want some more time.

21             MS. ROSS: Very well.  Thank you, Your Honor.

22             THE COURT: Very well.  Now, I don't know who is

23   involved in the management issues in this case.

24             MR. BUETHER: It's primarily me and Mr. Bittner have

25   been doing the hard work, although --

1          THE COURT: Well, then I will shorten your hard work

2   perhaps.  As the parties well know, I inherited this case upon

3   Judge Ward's retirement, and but for his retirement, under our

4   practice he had the first filed case and he would have had all

5   of these cases.  Maybe there was one he was disqualified in.

6   And my service in this case at most is to March 17th, and

7   perhaps only a few weeks.  So I'm not inclined to, and I think

8   it's premature to try to enter some universal management

9   control order that's going to take care of this case for all

10  times, because I don't think, one, it's possible if I don't

11  grant the Motion to Stay.

12         So here's what I am going to suggest.  We are not going

13  to enter a scheduling order today in any of these cases, new

14  cases, until I address the Motion to Stay, and I promise to do

15  that within the next few weeks.  If I grant the stay motion,

16  we need not worry about this.  If I don't grant it, I'm going

17  to give you a little direction on where I see some of these

18  issues going.  One, the Plaintiff has provided a rather

19  detailed, complex trial grouping and bifurcation.  I think

20  it's way too early to start talking about that.  I don't know

21  enough about the case nor do the parties.  And perhaps the

22  parties do.  I think it's premature to start going into the

23  detail the Plaintiff suggests.

24         On the other hand, if I understand the Defendants'

25  proposal, we are going to enter a separate scheduling order

1   for all of these cases and let them go their merry way.  Well,

2   I'm not going to do that.  And maybe that's not the

3   Defendants' position.

4       I am assuming everyone agrees that there should be a

5   common, if the case is not stayed, a common claim construction

6   hearing.  Is that correct?

7           MR. DURST: Correct.

8           MR. BUETHER: Yes.

9           THE COURT: Everyone agrees upon that.  And maybe you

10  are talking in terms of fall of next year, is that correct?

11          MR. BUETHER: Yes.

12          THE COURT: You know, if I were going to be here for

13  another two or three or four years, I would say we need to

14  move that date up even more, if at all possible, and have a

15  claim construction hearing as quickly as possible.  But I

16  don't know if that, under the circumstances, is possible.  I

17  can give the Plaintiff some guidance.  My rule is you are down

18  to ten claims before claim construction.

19          MR. BUETHER: I conceded that before you --

20          THE COURT: Okay.  Wise concession.

21          MR. BUETHER: Thank you.

22          THE COURT: If your position still is that a party

23  must show good cause before they have another bite at claim

24  construction, you should concede that.  If you haven't, that

25  will be denied.  I think probably the opinion I gave in a

1    Texas Instrument case was cited in some fashion.  But I am

2    convinced all the Defendants that want a new hearing on Judge

3    Everingham's claim construction is entitled to it.

4        I am not going to start to talk about the number of hours

5    for the various witnesses and the experts.  But what I am

6    basically saying, if this case is not stayed, it's not going

7    to be me that's going to be managing this case for two or

8    three years.  It's going to be someone else and that judge

9    should be making a lot of these long-term decisions on trial

10   dates and management and those sort of things.  But if I have

11   this case more than a few weeks, I think something needs to be

12   done if I don't stay it to start the process so progress can

13   be made between now and March 17th.

14       So I am going to direct, if I don't stay the case, then

15   ever who is dealing with these management issues, that you

16   have these general thoughts of mine on what I will and will

17   not do.  I think everyone, if this case is not stayed, you are

18   going to have to, if at all possible, work in some fashion to

19   streamline this case and make it -- you know, it's not

20   impossible to manage, but it's not going to be easy to manage.

21   We have those two extremes.  And this case obviously falls

22   more near the impossible stage versus some difficulty stage.

23       I am going to direct the parties, and obviously I've

24   already been directed to that, to Judge Davis' opinion in the

25   *Uniloc* case and what is it, *Parallel Networks* cases, that you

1   need to look to that for some guidance on perhaps how to

2   approach this, because I think he makes some very good

3   suggestions on cases involving in his case over a hundred

4   defendants, in this case approaching 500.  So there is going

5   to be the need, again I stress, if not stayed, for the parties

6   to make real hard efforts to come up with some type of plan to

7   streamline this case and make it where the judge that's

8   presiding over it and the parties are able to manage it and

9   move it forward.

10        Now there was some mention, and I don't know if the

11  Plaintiff has backed off on maybe no summary judgment.  I

12  wouldn't impose that.  If this case can be decided earlier

13  rather than later by summary judgment, well and fine.

14        So I am giving the parties some guidance on what I would

15  do and what I wouldn't do, and I would be directing the

16  parties that after I rule on the Motion to Stay, if we need to

17  go forward with a scheduling order, to come back with some

18  plan, taking into account my comments, Judge Davis' orders in

19  those two cases that I have mentioned, and come back with

20  hopefully some general agreement on how to go forward.  If

21  not, at least proposals from the parties or groups of parties

22  on your thoughts on how this case should go forward.

23        But my thoughts are if a claim construction hearing can

24  be set even before next fall that the parties should consider

25  that.  But it goes without saying that the judge that receives

1   this case is going to have to -- you are going to have to

2   accommodate that judge's schedule in some fashion.  So that's

3   probably, even though I might enter some orders in that

4   regard, I don't know how long term they are going to be good

5   with someone else's schedule.

6        Have I given the parties some guidance?  And I apologize

7   for not perhaps taking all this up, but I think a lot of this

8   is premature, and these cases, some of them have been on file

9   since 2010, and a few more weeks I don't believe is going to

10  matter without an order in place.

11            MR. BUETHER: Can I make a few comments, Your Honor?

12  Well, I wanted to bring one thing to your attention in terms

13  of how you pass the baton.  I noticed the other day, I just

14  happened to be looking at --

15            THE COURT: I like to try to do that occasionally,

16  yes.

17            MR. BUETHER: I was looking at some pleadings in the

18  case that was already litigated extensively, the *Geomas* case

19  which generated the claim construction order, and I noticed on

20  the docket sheet that Mr. Gilstrap was counsel for the

21  defendant in that case.  I just wanted to point that out.

22            THE COURT: That's not something I need to sign now.

23  That's why I say within a few weeks, or at most March 17th.

24            MR. DURST: I think that's mistaken.  I was counsel

25  for the defendant in that case.

1          MR. BUETHER: Well, he was counsel for one of the

2     defendants in that case, I believe.

3          THE COURT: Well, I am not here to determine any

4     recusal issues.

5          MR. BUETHER: No, no.  I just wanted to let you know

6     about that.

7          THE COURT: I think I have been on the bench long

8     enough to realize that's a possibility.

9          MR. BUETHER: Well, I didn't even realize it until a

10    couple of days ago.

11         THE COURT: Let's move on to something more

12    productive.

13         MR. BUETHER: Okay.

14         THE COURT: Is that the only comment you wish to

15    make?

16         MR. BUETHER: The only other thing is that on the

17    Uniloc and the *Parallel Networks* case, well, especially on

18    *Uniloc*, and I think this case is --

19         THE COURT: I don't want to debate.  I just want the

20    parties to look at that and try to come up with some plan.  If

21    for whatever reason you feel none of Judge Davis' management

22    styles have merit, I guess you can let me know.

23         MR. BITTNER: That's agreeable, Your Honor.

24         THE COURT: Very well, anything else?  We will be in

25    recess.

1        (Adjourned at 11:54 a.m.)

2

3                        REPORTER'S CERTIFICATION

4

5        I certify that the foregoing is a correct transcript from

6    the record of proceedings in the above-entitled matter.

7        Dated this 28th day of November, 2011

8                                      /s/Libby Crawford
                                       Libby Crawford, CSR, CVR
9                                      Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25