# EXHIBIT M

| | |
|---|---|
| GEOTAG, INC., <br><br> v. <br><br> RENT-A-CENTER, INC., *et al.* | 2:10-cv-00573-DF |
| GEOTAG, INC., <br><br> v. <br><br> THE WESTERN UNION COMPANY, *et al.* | 2:10-cv-00574-DF |
| GEOTAG, INC., <br><br> v. <br><br> ROYAL PURPLE, INC., *et al.* | 2:10-cv-00575-DF |
| GEOTAG, INC., <br><br> v. <br><br> YAKIRA, L.L.C., *et al.* | 2:10-cv-00587-DF |
| GEOTAG, INC., <br><br> v. <br><br> WHERE2GETIT, INC., *et al.* | 2:11-cv-00175-DF |

**NOTICE OF COMPLIANCE WITH COURT ORDER
REGARDING NOVEMBER 9, 2011 CASE MANAGEMENT CONFERENCE**

EXHIBIT M

In compliance with the Court's October 14, 2011 Order (*see, e.g.*, Case No. 2:10-cv-570, Dkt. No. 319), the undersigned Defendants (collectively, "Defendants") in the above-captioned actions hereby provide the Court with this Brief setting forth their positions regarding scheduling issues on which the Parties disagree. Defendants, however, note that the Court need not address many of these issues as the Locator Actions (Case Nos. 2:10-cv-569-575, 2:10-cv-587, and 2:11-cv-175) should be stayed for the reasons set forth in Defendants' Motion to Stay (*see, e.g.*, Case No. 2:10-cv-570, Dkt. No. 269).

### A. Post-*Markman* trial deadlines and procedure (including trial settings).

Defendants object to Plaintiff's proposed trial groupings. Plaintiff's proposed trial groupings would invert these cases and negate the order in which Plaintiff chose to sue Defendants. Namely, the Defendants in the Yellowpages and Frontier Actions (Case Nos. 2:10-cv-272 and 2:10-cv-265) would be placed in Plaintiff's proposed Group 3 even though they were sued a full six months before any other defendant. Indeed, Infringement and Invalidity Contentions have already been exchanged in the Yellowpages and Frontier Actions while the remaining actions are still in the process of negotiating scheduling orders. Plaintiff's proposed trial groupings also would serve to vacate the schedules already agreed to by GeoTag and entered by the Court in the Yellowpages and Frontier Actions.

Accordingly, Defendants respectfully request that the pre-trial conference settings for the above-captioned actions generally follow the order in which they were filed. Specifically, Defendants request that the Yellowpages and Frontier Actions proceed to trial first in September of 2013, which is the trial setting in the current Docket Control Orders in these actions. Following the resolution of the earliest filed Yellowpages and Frontier Actions, Defendants

respectfully request that the Locator Actions be set for final pre-trial conference six months later on March 2014.[1]

Moreover, Plaintiff's proposal appears to be little more than a transparent attempt to put settlement pressure on the largest, though least-interested group of Defendants. Plaintiff's Group 1 consists of the later-sued "brick and mortar" retailers, the lion's share being mere <u>customers</u> of other companies (*e.g.* Microsoft, Google, Where2GetIt, and Xionetic) that provide the accused locator technologies. As mere customers, these brick-and-mortar Defendants are not the real parties in interest to this litigation. Plaintiff, however, has repeatedly demonstrated that it has no interest in litigating its case against the real parties in interest (Plaintiff's proposal sets the vendors and providers of the accused technology in the final "Group 4"), but rather Plaintiff wishes to pressure hundreds of brick-and-mortar Defendants into cost-of-litigation settlements. As such, the Court should reject Plaintiff's proposal as an unfair misuse of the justice system.

Defendants further object to Plaintiff's proposed bifurcation by issue as premature at this stage. Defendants submit that such trial groupings and any such bifurcation should be considered by the Court following dispositive motion practice by all parties. At that time, Defendants believe that both the Court and the Parties will be better positioned to consider potential trial settings based on settlements that will have likely occurred, the result of mediation efforts, and the outcome of any dispositive motion practice. Moreover, Defendants object to Plaintiff's proposed trial groups and bifurcation of issues as unfair—Plaintiff has chosen to sue hundreds of defendants in a particular order and now endeavors to delay resolution for the grand majority of those Defendants by postponing dispositive motion practice and liability trials until a

---

[1] Tellingly, Plaintiff has referred to the Locator Actions as "Follow-on Actions." *See, e.g.,* Case No. 2:10-cv-570, Dkt. No. .318 Plaintiff's proposal belies its own nomenclature, as the "Follow-on Actions" would proceed to trial first and be followed by the earliest filed Yellowpages and Frontier Actions.

date uncertain. Moreover, Plaintiff's attempt to postpone any dispositive motion practice is contrary to the practical and flexible approach adopted by Judge Davis in *Parallel Networks*. *Parallel Networks, LLC v. Abercrombie & Fitch*, 2011 WL 3609292, at *1, 10 (E.D. Tex. Aug. 12, 2011). In fact, this case may present unique opportunities for early disposition as to a large number of defendants, and such a solution should not be precluded at this time. Accordingly, Defendants respectfully submit that these cases can be resolved in dispositive motion practice and object to any attempt by Plaintiff to delay the date on which all Defendants may bring such motions

The Court should also reject Plaintiff's proposed bifurcation by issue as unfair and logistically unworkable. Based on Defendants' current understanding, Plaintiff proposes a three week trial in which the first week would address the alleged infringement by ten of its "Group 1" Defendants, followed by a second week addressing the invalidity of <u>all Defendants</u>, followed by a final week addressing damages for the ten "Group 1" Defendants. Plaintiff's proposal ignores the logistical nightmares inherent in a single trial disposing of the invalidity claims of nearly 350 Defendants. Rather, Plaintiff's drastic and unprecedented bifurcation seeks to improperly game the system—heaping a nightmarish coordination effort on hundreds of Defendants while insulating Plaintiff and allowing it to prepare for and confront only ten Defendants on those issues for which it bears the burden. Plaintiff's machinations should be flatly rejected.

In addition, Plaintiff's proposal for a separate trial on invalidity for all Defendants prejudices Defendants. Having a trial on invalidity alone would allow Plaintiff to take inconsistent positions on validity and infringement. Plaintiff will take broad positions of the claims for infringement and, if infringement is found, will turn around and take narrow positions

in order to sustain validity of the claims. Determining infringement and validity in the same trial will prevent Plaintiff from taking such inconsistent positions.

Defendants finally note that Plaintiff's proposal also appears to set forth a schedule in which dispositive motion practice and liability trials for a small number of defendants can presumably serve as exemplars or "bellwethers" for settlement with the remaining defendants. To the extent that Plaintiff believes that a bellwether may be helpful for managing the above-captioned cases and specifically the Locator Actions, Defendants respectfully submit that the Declaratory Judgment Actions filed by Microsoft, Google, and Where2GetIt in Delaware are the appropriate bellwether for the Locator Actions. As set forth in Defendants' Motion to Stay (*see, e.g.*, Case No. 2:10-cv-570, Dkt. No. 269), over 60% of the Defendants in the Locator Actions are customers of Microsoft, Google, and Where 2 Get It. As a result, to the extent the Court agrees with the theory behind Plaintiff's approach, the Microsoft, Google, and Where2GetIt actions will serve as the best and most appropriate bellwether for at least those Defendants that are their respective customers. Alternatively, if the Frontier and Yellowpages Actions proceeded to trial first, in accordance with the schedules already in place for those cases, those cases could serve the bellwether purpose Plaintiff purportedly seeks to achieve through its drastic reordering of the pending cases. For this reason and for the reasons set forth in Defendants' Motion to Stay, Defendants submit that the Court should stay the Locator Actions pending resolution of the Microsoft, Google, and Where 2 Get It Declaratory Judgment Actions.

**B.    Whether the docket control orders already entered in the Yellowpages and Frontier Actions should still govern all post-*Markman* and trial deadlines or whether revised post-*Markman* and trial deadlines (coordinated with the Follow-On Actions) are necessary.**

In accordance with Defendants' proposal above, the September 2013 trial agreed to by GeoTag and set by the Court in the current Yellowpages and Frontier Docket Control Orders is

appropriate. As a result, Plaintiff's attempt to delay resolution of these first-filed actions until its "Group 3" proposed trial setting should be rejected. Rather, the current Docket Control Orders should govern all post-*Markman* deadlines in the Yellowpages and Frontier Actions. No efficiencies or other benefits are gained by delaying the Frontier and Yellowpages Actions until Plaintiff's "Group 3" trial setting. Indeed, as stated above, the only apparent benefit from Plaintiff's proposed scheduling machinations is to increase its settlement leverage with certain groups of Defendants while prejudicing the rights of the later trial groupings, which contain the Defendants with a vested interest in the technology at issue.

### C. Whether Plaintiff should limit the number of asserted claims to ten (10) before or after *Markman* proceedings.

Due to the number of accused infringers in these cases, Defendants respectfully request that Plaintiff limit its number of asserted claims to ten (10) prior to *Markman* proceedings. Plaintiff has chosen to sue hundreds of defendants with different accused technologies (see Plaintiff's proposed trial groupings) in a short period of time. Due to the difficulties inherent in any coordination among this number of defendants during *Markman* proceedings, and in particular *Markman* briefing, Defendants respectfully request that the Court order Plaintiff to limit its number of asserted claims before these deadlines.

Moreover, Defendants understand that it is this Court's normal practice to limit the number of asserted claims to ten prior to *Markman* proceedings, as limitation of the number of asserted claims will naturally limit the number of potentially disputed terms and proposed constructions, resulting in more efficient *Markman* proceedings for all involved, including the Court. *See DDR Holdings, LLC v. Hotels.com*, Case No. 2:06-cv-42, Dkt. No. 265 (E.D. Tex. Aug. 8, 2011) (Folsom, J.) (explaining the Court's standard practice of limiting plaintiff to ten

claims for *Markman* proceedings). Plaintiff cannot show good cause to deviate from this Court's standard practice.

D. **Whether Defendants should be limited to twenty (20) prior art references at some point during the pre-trial proceedings.**

Defendants object to Plaintiff's proposed limitation of prior art references as unfair and unworkable. While a limitation on the number of asserted claims is common practice in the Eastern District of Texas (indeed, it is a required entry in this Court's model docket control order), Plaintiff presents no authority for limiting Defendants' invalidity defense. Moreover, Plaintiff should not be allowed to burden the parties and this Court with hundreds of infringement assertions against Defendants' various accused systems while simultaneously requesting that Defendants can collectively use only 20 prior art references. Such a request is patently unfair and should be rejected.

Moreover, Defendants note that the number of potentially invalidating references will be driven by the breadth of Plaintiff's infringement contentions. Based on Plaintiff's current allegations in this case, Defendants believe that Plaintiff seems to write critical limitations out of the patent in order to obtain the appropriate read on Defendants' accused websites. Namely, Plaintiff appears to be taking the position that the patent-in-suit covers any geographically based search on the internet. If this is the case, Defendants should be allowed latitude to demonstrate the absurdity of such a broad claim in the face of the mountain of prior art against it.

E. **Whether procedures requested by Plaintiff requiring a showing of good cause for reconsideration of terms previously construed by Magistrate Judge Everingham (*see Geomas (Int'l) Ltd. v. Idearc Media Services-West, Inc.*, Case No. 2:06-cv-475-CE, Dkt. No. 110 (Nov. 20, 2008)) are appropriate.**

As this Court has previously stated, "while courts *may* defer to previous claim constructions . . . such decisions are made on a case-by-case basis, at the discretion of the trial court." *Texas Instruments, Inc. v. Linear Techs. Corp.*, 182 F. Supp. 2d 580, 588-89 (E.D. Tex.

2002) (Folsom, J.) (emphasis in original). Moreover, "[w]here defendants have new arguments to bring to the attention of the court, defendants' rights to fully litigate their claims are particularly persuasive." *Id.* at 589. Here, Magistrate Judge Everingham previously construed the '474 Patent three years ago in an unrelated action involving a different named Plaintiff, completely different Defendants, and different accused functionalities. *See Geomas (Int'l) Ltd. v. Idearc Media Services-West Inc.*, Case No. 2:06-cv-475-CE, Dkt. No. 110 (Nov. 20, 2008). Since that time, GeoTag has broadened its interpretation of the '474 Patent to encompass any "store locator," "restaurant locator," or even "career opportunity" feature on a commercial webpage, which is very different technology from that accused in the *Geomas* case, the Superpages website.

Due to these differences, Defendants contemplate that new arguments may need to be brought to the attention of the Court. As a result, Defendants respectfully request that they be allowed to fully brief and argue disputes related to claim interpretation.

### F. The appropriate limitations on 30(b)(1) and 30(b)(6) depositions for the Locator Actions.

The Parties have agreed to limit their proposed deposition testimony as indicated below with the Parties remaining disputes noted in bold:

- a. <u>Total Fact Deposition Time:</u> Defendants jointly may take up to 250 hours of oral depositions in all cases, and each Defendant or Defendant Group[2] may take 14 hours of deposition testimony on issues pertaining to that Defendant or Defendant Group. Plaintiff may take a maximum of 20 hours of depositions of persons employed by or affiliated with each Defendant or Defendant Group. Plaintiff may take up to 70 hours of depositions of third parties in all cases. This excludes expert depositions and Rule 30(b)(6) depositions of the parties.
- b. <u>Party Depositions under Rule 30(b)(6):</u> **Plaintiff may take up to 14 or 30 hours of 30(b)(6) deposition testimony of each Defendant or Defendant Group.**

---

[2] As used herein, the term "Defendant Group" shall refer to related entities (*e.g.*, Polo Ralph Lauren Corp. and Ralph Lauren Media, LLC constitute a Defendant Group). Such related entities are often accused of infringement in the same paragraph of Plaintiff's Complaint.

> Defendants jointly may take up to 30 hours of 30(b)(6) deposition testimony of Plaintiff, and each Defendant or Defendant Group individually may take up to three (3) hours of deposition testimony of Plaintiff on issues particularly pertaining to the allegations asserted against that Defendant or Defendant Group.
>
> c. <u>Depositions of Inventors:</u> Defendants may jointly take up to 14 hours of deposition testimony of each of the named inventors of the patent-in-suit **(Plaintiff requests that this 14-hour limitation include all depositions of GeoTag CEO John Veenstra, who is a named inventor of the patent-in-suit).**

First, recognizing the enormous burdens that deposition discovery may create given the number of parties to the Locator Actions (based on a review of the current docket sheets, 340 individual defendants are being sued in the Locator Actions), Defendants have agreed to a drastic reduction in their 30(b)(6) deposition hours. As a group, all 340 Defendants would share 30 common hours. Each individual Defendant would then get a mere 3 hours of individual 30(b)(6) time.

Thus, Defendants have agreed to limit themselves to 14 hours of individual 30(b)(1) time and 3 hours of individual 30(b)(6) time. These 17 total individual hours represent a drastic, though necessary reduction, from the 70 hours normally contemplated by the Federal Rules.

Plaintiff, however, has not agreed to similarly reduce its requested deposition time. Rather, Plaintiff requests 20 hours of 30(b)(1) and 30 hours of 30(b)(6) <u>for each Defendant or Defendant Group</u>. This represents a meager and insufficient reduction from the norm that does not reflect the appropriate scope of discovery in these cases. As discussed above, and in greater detail in Defendants' Motion to Stay, Plaintiff has sued hundreds of Defendants who have little relevant information because they are mere customers of other companies that develop and provide the accused locator functionality (*e.g.*, Google and Microsoft). The vast majority of Plaintiff's discovery will necessarily be directed to the companies that provide the accused locator functionality, via third-party discovery in these cases and party discovery in the Delaware litigation with Microsoft, Google, or Where 2 Get It. Given the small amount of discoverable

information possessed by the customer Defendants, Plaintiff's proposal of 50 total hours of deposition time against each Defendant or Defendant Group far exceeds a reasonable discovery limit and is unduly burdensome. Individual Defendants are willing to meet and confer with Plaintiff as these cases develop regarding any necessary additional deposition hours based on party-specific circumstances. But Plaintiff should be limited to 20 hours of 30(b)(1) and 14 hours of 30(b)(6) time per Defendant or Defendant Group absent a demonstrated need for further discovery of individual Defendants.

Second, Plaintiff has requested that the limitation on inventor deposition time should also govern all depositions of its Chief Executive Officer and co-inventor of the '474 Patent, John Veenstra. Inventor deposition limits should only govern those depositions noticed for individuals in their <u>capacity as inventors</u>. Plaintiff, however, has chosen to appoint one of the inventors as its CEO. As a result, Defendants should be allowed to use some of their common or individual 30(b)(1) time to depose Mr. Veenstra in his capacity as a Chief Executive Officer of GeoTag, LLC (including his role in any pre-suit investigation, his role in licensing/settlements efforts, and his role in the current day-to-day operation of the company). Accordingly, Defendants respectfully request the Court reject Plaintiff's proposed limitation on depositions of Mr. Veenstra.

### G. Defendants' Proposal Regarding Electronic Discovery and ESI

Attached as Exhibit A is Defendants' proposed Order on Electronic Discovery for the Locator Actions, which was submitted to Plaintiff on October 21, 2011. Defendants will be prepared to discuss the manner in which Electronic Discovery should be handled in the Locator Actions at the upcoming Case Management Conference if the Court deems it appropriate.

Dated: October 26, 2011

Respectfully submitted,

/s/ Neil J. McNabnay
Neil J. McNabnay
Texas Bar No. 24002583
njm@fr.com
Michael A. Bittner
Texas Bar No. 24064905
mrb@fr.com
Jane J. Du
Texas Bar No. 24076355
jjd@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 - Telephone
(214) 747-2091 - Facsimile

COUNSEL FOR DEFENDANTS
ASICS AMERICA CORP.; AVIS BUDGET GROUP, INC.; AVIS RENT A CAR SYSTEM, LLC; BEST MAID PRODUCTS, INC.; BJ'S WHOLESALE CLUB, INC.; THE BOEING COMPANY; BROOKSTONE COMPANY, INC.; BURGER KING CORP.; CABELA'S, INC.; CHANEL, INC.; CICI ENTERPRISES, LP D/B/A/ CICI'S PIZZA; DOCTOR'S ASSOCIATES, INC. D/B/A SUBWAY; DOLLAR RENT A CAR, INC.; DOLLAR THRIFTY AUTOMOTIVE GROUP, INC.; DOLLAR TREE, INC.; GATES THAT OPEN, LLC D/B/A/ MIGHTY MULE; HINKLEY LIGHTING, INC.; INTERSTATE BATTERY SYSTEMS OF AMERICA, INC.; JACK IN THE BOX, INC.; KOHLER CO.; KUBOTA TRACTOR CORP.; LEARNING EXPRESS, INC.; LIVE NATION WORLDWIDE, INC.;; PIP, INC. D/B/A PIP PRINTING AND MARKETING SERVICES; POLO RALPH LAUREN CORP.; RADIO SHACK CORP.; RALPH LAUREN MEDIA, LLC; RICHEMONT NORTH AMERICA, INC. D/B/A CARTIER; SEVEN FOR ALL MANKIND, LLC; SOUTHERN STATES COOPERATIVE; STERLING JEWELERS, INC. D/B/A JARED THE GALLERIA OF JEWELRY D/B/A KAY JEWELERS; TICKETMASTER L.L.C.; TIFFANY & CO. D/B/A TIFFANY & COMPANY; THRIFTY, INC.; VAN CLEEF & ARPELS, INC.; WINN-DIXIE STORES, INC.